## Case No. 2,876.

### The CLEMATIS.

[Brown, Adm. 499;[1] 6 Chi. Leg. News, 405.]

District Court, E. D. Michigan. Aug., 1874.

DESERTION OF TOW BY TUG — JUDGMENT OF MASTER.

1. Where a tug abandons her tow of barges during a storm, the burden is upon the tug to show a sufficient excuse for such abandonment.

2. Much, however, must be left to the judgment of competent officers in such an emergency, and such judgment formed upon the spot and acted upon in good faith will not be impeached, except upon a clear preponderance of proof that it was erroneous.

[Cited in The James P. Donaldson, 19 Fed. 266; The Frederick E. Ives, 25 Fed. 450; The Maria Luigia, 28 Fed. 249; The Wilhelm, 47 Fed. 93.]

3. Where it was shown that the tow-line parted in the night, during a storm of great severity, and that the master of the tug was unable to pick up the line, to discover the lights of the tow, or to make any efforts to regain it without great danger to the tug; Held, he was justified in abandoning it.

This was an action for breach of duty, resulting in the loss of the barge Mohawk, by reason of the alleged unlawful desertion of the same during a storm in Lake Huron. On October 30th, 1870, the tug Zouave left Sag-

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

inaw with six barges in tow, bound to Cleveland. On arriving off Pointe aux Barques, the weather became rough, and the tow put into Port Austin bay for shelter. Here they found the Clematis. The tow was then divided, and, at the request of the master of the Zouave, the Clematis took three of the largest barges, of which the Mohawk was one, and put to sea, about half past seven in the evening. Although the storm continued to increase in violence, everything went well, the barges losing none of their deck loads, until about eleven o'clock, when the line connecting the tug with the forward barge parted, and set the tow adrift. The tug turned around, but failing, as her officers alleged, to see the lights of the tow, made no efforts to pick them up, and in a few minutes resumed her course down the lake. During the night, the Mohawk went to pieces, and was lost, with a part of her crew.

[For a decision overruling the exception of claimants to the fourth article of the libel, see Case No. 2,875, next preceding.]

H. B. Brown and W. A. Moore, for libellant.

Alfred Russell, for claimant.

LONGYEAR, District Judge. The libel, as amended, contains one, and only one, charge of fault, viz.: That the tug negligently deserted the tow; which charge, as set up in the amended libel, is in the following words: "That after taking the said barges in tow as aforesaid, and upon the night of the said 30th of October, the said barges Mills, Mohawk and Holland, being attached to said tug by lines astern in the order last above stated, the said tug Clematis, when off and about abreast of Pointe aux Barques, the lake being then somewhat rough, and the said barges being then solely dependent upon the said tug for their safety, and the line connecting her with the said barges having parted, without rounding to or stopping, negligently deserted said barges, with their cargoes and crews, and left them to their fate." Upon the argument, other faults were sought to be pointed out, and were urged with some earnestness, but, as the above is the only fault charged in the libel, it is the only one that can be considered.

The answer admits that the tug left the tow after the line had parted, but denies that she did so without rounding to or stopping, or negligently, as alleged; and avers that she not only rounded to, but for about an hour made exertions to find and secure the tow, and that she left only when it was found to be impossible, on account of the darkness of the night and the severity of the storm. The answer also alleges that the barge was unseaworthy in several respects, and that she failed to ride out the storm, and was lost on that account. It is undisputed that, when the line parted, a storm was in progress of greater or less severity, but at all events of such severity as to en-

danger the safety of the vessels composing the tow if left to their fate (being vessels of the kind called barges, and dependent solely upon towage, instead of any efficient means of propulsion of their own); also that the tug did in fact fail to regain the tow, and did leave the vessels composing it to their fate. In view of these undisputed facts, the burden was on the tug to show a sufficient excuse for such failure and abandonment; and it is to this one point that the issue in the case is really narrowed down. There is a preponderance of proof that after the line parted, the tug, after keeping on her course a short distance, rounded to, and for a short time, variously estimated by the witnesses at from fifteen minutes to an hour, stood up toward where she left the barges, and then, not finding them, and not seeing any lights by which to determine their whereabouts, and the darkness being such that except by means of lights they could not be seen from the tug until the tug should be too near them for safety in such a storm, and the tug's captain, for these reasons, deeming it useless and unsafe to attempt to find the barges, and if found, to attempt to approach them so as to regain the line, without further effort abandoned the attempt, and came in toward the land for shelter, and made no further effort to rescue the barges until the next day, in the afternoon, when the storm had abated. It certainly would have been more satisfactory if the tug had made a more persistent effort to find the barges and pick them up; yet, if the storm was in fact of such severity as to render such further effort hopeless under the circumstances, the want of it cannot be attributed as a fault.

The business of towing by steam vessels has come to constitute one of the great interests of navigation—so much so upon the great lakes and their connecting waters that it has brought into existence a class of vessels of great carrying capacity dependent almost solely upon being towed as a means of propulsion. Hence steam tugs, making the towing of vessels a business, often necessarily assume great responsibilities; and it is but fair and right that they should be held to a strict account in the manner of the discharge of their important duties. It will not do to hold that they may excuse themselves and abandon the safety of interests, and often of lives, intrusted to and dependent upon their courage and fidelity, for slight causes, or on account of even ordinary obstacles. The causes must be ample, and the obstacles in the way of performance must be at least of an extraordinary character, if not absolutely insurmountable. Questions of this character are, however, often among the most difficult to determine. Of the truth of this the present case is a marked instance. Storms and their severity are so variable in degree, and the opinions of even competent and experienced seamen in regard thereto in any given case are often so conflicting, as is the case

here, that in most cases it is exceedingly difficult to decide in regard to them with any degree of nicety or satisfaction. In all such cases much must be left to the judgment of the officers in charge during the emergency. They have the circumstances then all before them far more clearly and intelligibly than they can possibly be reproduced in court; and when such officers are able, competent and experienced navigators, a judgment formed upon the spot, and acted on by them in good faith, ought not to be impeached or disregarded, except upon a clear preponderance of proof that it was erroneous. Lawrence v. Minturn, 17 How. [58 U. S.] 109, 110. The general ability, competency and experience of Capt. Rumage, of the tug, is in no manner questioned nor assailed. It is in evidence that in his judgment at the time, the severity of the storm, combined with the darkness of the night and the absence of lights by which the whereabouts of the barges could be determined, rendered it impossible for him to regain them, and extremely hazardous to make the attempt, and the good faith of that judgment is not impugned. Its correctness only is questioned. Capt. Ellery, of the Mills, the head barge, and to which the tug's line was attached, seems by his actions to have entirely coincided with Capt. Rumage in opinion, in this, that he made no preparations, and was in fact entirely unprepared to second any attempt to regain the tow should any such attempt be made by the tug, but, on the contrary, confined his exertions entirely to means of safety at his own command. I have examined and analyzed with care the voluminous and somewhat conflicting testimony upon this point, and the able and exhaustive arguments of the learned counsel on both sides, but shall not extend the opinion by going into that analysis here. It must suffice here to say that while I am in some doubt, I fail to find in the proofs that clear preponderance necessary, in my opinion, to overcome the opinion and judgment of Capt. Rumage formed upon the spot and acted on by him, and that I therefore consider it my duty to give him the benefit of the doubts I entertain. In this view of the case, it is unnecessary to notice the question of the unseaworthiness of the barge, raised by the answer. Libel dismissed.